1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11 | MARCIA SMITH,

12 |                       Plaintiff,

13 | v.

14 | JPMORGAN CHASE BANK, N.A., a
business entity; SADAF ZADEH, an
15 | individual; ANGEL ARENAS, an
individual; and DOES 1–10, inclusive,
16

17 |                      Defendants.

Case No.:  24-CV-1287 JLS (DTF)

**ORDER:**

**(1) DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT;**

**(2) OVERRULING PARTIES' EVIDENTIARY OBJECTIONS;**

**(3) GRANTING DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO COMPEL ARBITRATION; AND**

**(4) STAYING ACTION PENDING COMPLETION OF ARBITRATION PROCEEDINGS**

(ECF Nos. 9, 10, 17-3, 19-6)

18
19
20
21
22
23
24
25
26
27
28

      Presently before the Court are Plaintiff Marcia Smith's ("Plaintiff") Motion to Remand to State Court ("Remand Mot.," ECF No. 9) and Memorandum of Points and Authorities in support thereof ("Remand Mem.," ECF No. 9-1).  Defendant JPMorgan

Chase Bank N.A. ("Defendant" or "Chase") filed an Opposition to Plaintiff's Motion for Remand ("Remand Opp'n," ECF No. 14), to which Plaintiff filed a Reply ("Remand Reply," ECF No. 15).

Also before the Court is Chase's Motion to Compel Arbitration ("Arb. Mot.," ECF No. 10), along with Declarations of William A. Garrett ("Garrett Decl.," ECF No. 10-1) and Halie Williams ("Williams Decl.," ECF No. 10-2) in support of Chase's Motion to Compel Arbitration. Plaintiff then filed an Opposition to the Arbitration Motion ("Arb. Opp'n," ECF No. 17), along with Declarations of Plaintiff Marcia Smith ("Smith Decl.," ECF No. 17-1) and Caleb Logan ("Logan Decl.," ECF No. 17-2) in support of Plaintiff's Opposition. Plaintiff also filed Objections to Chase's Declarations in Support of its Motion to Compel Arbitration ("Pl.'s Arb. Objs.," ECF No 17-3). Thereafter, Chase submitted a Reply ("Arb. Reply," ECF No. 19), Supplemental Declaration of Halie Williams in Support of Chase's Motion to Compel Arbitration ("Suppl. Williams Decl.," ECF No 19-1), Responses to Plaintiff's Evidentiary Objections to Declarations in Support of the Motion to Compel Arbitration ("Resp. to Pl.'s Arb. Objs.," ECF No. 19-5), and Evidentiary Objections to Plaintiff's Declarations ("Chase's Arb. Objs.," ECF No. 19-6).

Having carefully considered the Parties' arguments, the evidence, and the law, the Court **DENIES** Plaintiff's Remand Motion, **OVERRULES** the Parties' Evidentiary Objections, **GRANTS** Chase's Arbitration Motion, and **STAYS** this action pending the completion of arbitration proceedings.

## BACKGROUND

### I.    Factual Background

On June 20, 2024, Plaintiff initiated this action in California Superior Court against Chase and two of its employees, Defendants Sadaf Zadeh and Angel Arenas (collectively, the "Individual Defendants"). In her Complaint, Plaintiff alleges all three Defendants assisted in financial elder abuse in violation of California Welfare and Institutions Code § 15610.30. Specifically, Plaintiff alleges she was the victim of an "Amazon" scam perpetrated by unknown individuals who convinced her to withdraw funds from her Chase

account ending in -8297 ("Account") and to deposit them into a Bitcoin ATM, as well as wire funds internationally to a bank account in Hong Kong in August 2023.  Compl. ¶¶ 25–34; Declaration of Kevin Kesterson in Support of Notice of Removal ("Kesterson Decl."), ECF No. 1-3 ¶ 3, Ex. A.

Plaintiff claims the Individual Defendants knew or should have known she was being scammed when she sought to complete a $37,000 wire transfer.[1]  *See* Compl. ¶¶ 43–44, 46–48.  Plaintiff also alleges, *inter alia*, that Chase had "actual knowledge of the scam" after she reported it, yet withheld its assistance until it was too late to do anything.  *See id.* ¶ 51.  The Complaint contains a second cause of action as to Chase alone for violations of California's Unfair Competition Law.

## II.    Procedural Background

On July 24, 2024, Chase removed this action to federal court pursuant to 12 U.S.C. § 632 and 28 U.S.C. § 1332(a), as well as 28 U.S.C. §§ 1441 and 1446, based upon statutory provisions providing for federal jurisdiction in matters related to foreign banking transactions.  Notice of Removal ("Notice") at 1, ECF No. 1.  In the Notice, Chase provides two grounds for removal.  Chase first cites the Edge Act, which grants federal courts subject matter jurisdiction over civil suits "to which any corporation organized under the laws of the United States" is a party and that "aris[e] out of transactions involving international or foreign banking."  12 U.S.C. § 632.  Chase notes that it is such a federally chartered corporation and claims this case involves a foreign banking transaction because the recipient of the alleged wire transfer was located abroad.  Notice at 3–4.  In the alternative, Chase asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Chase tacitly admits the Individual Defendants are not diverse from Plaintiff but argues the Court need not consider their citizenship because both are "fraudulently joined."  *Id.* at 4.

On July 31, 2024, the Court ordered Chase to show cause as to why the action should

---

[1] Plaintiff also seeks to recover for a $35,000 cash withdrawal that resulted from the same scam the day before the wire transfer took place.  *See* Compl. ¶¶ 27–31.  Neither of the Individual Defendants appear to have been involved with said cash transaction.  *See id.*

not be remanded for lack of subject matter jurisdiction.  ECF No. 4 ("OSC").  First, the Court noted concerns with finding jurisdiction appropriate here under the Edge Act.  The Court recognized that removal jurisdiction is appropriate under the Edge Act "when: (1) the lawsuit is a civil action in law or equity; (2) a corporation organized under the laws of the United States is a party; and (3) the lawsuit arises out of transactions involving international or foreign banking."  OSC at 3 (citing *Kim v. Wells Fargo, N.A.*, No. 21-CV-05405-JD, 2021 WL 5996486, at *2 (N.D. Cal. Dec. 20, 2021)).  While acknowledging the first two requirements were met, the Court expressed reservation about whether the action "arises out of" the international wire transfer.  OSC at 4–5.

Next, the Court raised its doubts as to Chase's alternative assertion of diversity jurisdiction, on the basis that the Individual Defendants' citizenship, which would otherwise destroy diversity, should not be considered because they were fraudulently joined in the action.  *Id.* at 5–8.

On August 14, 2024, Chase filed its Response to the Order to Show Cause Re Removal ("Resp. to OSC," ECF No. 5), asserting the action was properly removed under the Edge Act, as this action "arises out of" an international wire transfer.  Resp. to OSC. at 3–10.  Chase explained that Plaintiff's "claims are founded on her accusation Chase should have known about the purported scam, including ***because Plaintiff requested the international wire transfer***."  *Id.* at 6 (emphasis in original) (citing Compl. ¶ 48(c)).  Further, Chase asserted "there is indisputable evidence that Plaintiff directed the wire to Hong Kong and that it represents more than 50% of the amount at issue."  *Id.* at 6–7 (citing Keterson Decl., Ex. A at 2).

The Court noted that it continued to find it bizarre for federal jurisdiction to essentially turn on random chance, but was satisfied by Chase's response, and discharged its Order to Show Cause.[2]  *See* ECF No. 6 ("Discharge Order") at 2 (first citing 12 U.S.C.

---

[2] Chase also reiterated its fraudulent joinder argument in its Response to the Order to Show Cause, but the Court remained unpersuaded.  *See* Discharge Order at 2 n.2.

24-CV-1287 JLS (DTF)

§ 632; and then citing *Lin v. JPMorgan Chase Bank N.A.*, No. 2:24-CV-01837-JLS-E, 2024 WL 2272387, at \*4 (C.D. Cal. May 19, 2024) ("The Court admits that it is somewhat strange for federal-court jurisdiction to turn on the happenstance of where a wire transferee is located, but that result flows from Congress requiring a nexus to an 'international' transaction.")).

Subsequently, on September 10, 2024, Plaintiff filed her Motion to Remand to State Court. The next day, Chase filed its Motion to Compel Arbitration.

## PLAINTIFF'S MOTION TO REMAND

### I.    Legal Standard

Generally, defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) (citation omitted). "The party seeking the federal forum bears the burden of establishing that the statutory requirements of federal jurisdiction have been met." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013) (citing *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010)).

### II.    Analysis

Plaintiff argues that the Court should remand because it lacks Edge Act (12 U.S.C. § 632) jurisdiction as, among other things, her claims do not "arise out of" international banking transactions, *see* Remand Mem. 4–7, in effect, urging the Court to reconsider its prior Order discharging its Order to Show Cause on the same issue. Defendant argues Plaintiff's Motion for Remand is thus an improper motion for reconsideration. Remand Opp'n at 4–5. However, the Court declines to deny Plaintiff's Motion on this ground as 28 U.S.C. § 1447(c) permits parties to raise subject matter jurisdiction at any time, and Plaintiff has not otherwise been heard on this issue. Nonetheless, as explained below, the Court is not persuaded by Plaintiff's arguments.

Courts have widely recognized three requirements for Edge Act jurisdiction: "(1) a

civil action, (2) in which a 'corporation organized under the laws of the United States' is a party, and which (3) 'aris[es] out of transactions involving international or foreign banking.'" *Lin*, 2024 WL 2272387, at *1 (first citing *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 780 (2d Cir. 2013); and then citing *Gray v. Ben*, No. CV 22-03090 DSF (PVCx), 2022 WL 3928375, at *2 (C.D. Cal. Aug. 31, 2022)).

Specifically, here, Plaintiff argues (1) her claims do not "arise out of" international banking transactions; (2) the Edge Act's "actual purpose" favors remand; (3) the case does not "involve" an international banking transaction; and (4) Chase has asserted mutually exclusive positions as to the Court's subject matter jurisdiction. *See generally* Remand Mem.

As the Court previously held when discharging its Order to Show Cause, Plaintiff's harm is alleged to derive in significant part from a wire transfer that happened to be received abroad, which is sufficient for Edge Act jurisdiction. *See* Discharge Order; *see also Lin*, 2024 WL 2272387, at *4. Plaintiff emphasizes that she "interacted with Defendants only in San Diego County and used money only from her local bank account." Remand Mem. at 5–6. The Court does not dispute this. Rather, in its Discharge Order, the Court acknowledged as much, noting it "sees little in the Complaint to suggest that the international nature of said wire transfer bears on Plaintiff's claims." Discharge Order at 2 n.4. Nevertheless, the Court held, as Plaintiff's alleged harm "derives in significant part from a wire transfer that *happened to be received abroad*[,]" the Court found "this case falls under the Edge Act's vast umbrella." *Id.* (emphasis added).

While Plaintiff urges the Court to rely on *Gavaldon v. Standard Chartered Bank International (Americas) Limited*, No. 16cv590-LAB (MDD), 2020 WL 835311 (S.D. Cal. Feb. 20, 2020), *see* Remand Mem. 4–7, the Court finds such case readily distinguishable. In *Gavaldon*, the court determined Edge Act jurisdiction was "present at the time of removal," but as the court had dismissed the claims relating to international transactions, such basis for jurisdiction had "now disappeared." 2020 WL 835311, at *11. Moreover, the Court is not swayed by Plaintiff's reliance on *Kim*, a case the Court previously

considered in its Order to Show Cause. *See* OSC at 4–5 (citing *Kim*, 2021 WL 5996486, at \*2). The Court was—and remains—ultimately persuaded by the multiple directly analogous decisions finding Edge Act jurisdiction. *See Lin*, 2024 WL 2272387, at \*2–4 (finding Edge Act jurisdiction because plaintiff's claims under the California financial elder abuse statute and the Unfair Competition Law arose out of an international wire transfer); *Gray*, 2022 WL 3928375, at \*2–4 (holding that Chase's processing of plaintiff's international wire transfer fell within the purview of the Edge Act); *Bortz v. JPMorgan Chase Bank*, N.A., No. 21-CV-618 TWR (JLB), 2021 WL 4819575, at \*2 n.2 (S.D. Cal. Oct. 15, 2021) (upholding removal under the Edge Act of California financial elder abuse claim associated with international wire transfers); *see also Burge v. JPMorgan Chase Bank, N.A.*, No. 1:22-cv-00607-RLY-DLP, 2022 WL 18540501, at \*3 (S.D. Ind. Nov. 18, 2022) (since wire transfers were directed to foreign banks, the transfers were "squarely within the ambit of the Edge Act"); *Ekopel D.O.O. v. Citibank, N.A.*, 717 F. Supp. 3d 17, 26 (D.D.C. 2024) (holding "wire transfers directed to foreign banks fall 'squarely within' the 'involving international or foreign banking' requirement"); *Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1047 (8th Cir. 2020) (concluding Edge Act jurisdiction exists even under narrow interpretation where plaintiff "alleged foreign banking transactions involving [Chase] as a core part of their claims of wrongdoing").

And while Plaintiff suggests that the Edge Act's "actual purpose" favors remand, *see* Remand Mem. at 7–8, and that her claims "are not integrally tied to banking activity and do not require the Court to apply banking law," *id.* at 10, the Court must follow what Congress has required. *See Lin*, 2024 WL 2272387, at \*4 ("The Court admits that it is somewhat strange for federal-court jurisdiction to turn on the happenstance of where a wire transferee is located, but that result flows from Congress requiring a nexus to an 'international' transaction.").

Finally, Plaintiff argues that Chase asserts "mutually exclusive positions" because Chase's Notice claims the $75,000 amount in controversy for diversity jurisdiction is satisfied, *see* Remand Mem. at 10 (citing Notice ¶ 14), yet Chase also represented

Plaintiff's $37,000 wire transfer was "*over half* 'of the amount at issue," *id.* (emphasis added) (citing Resp. to OSC at 1–2, 6–7). Plaintiff argues "the amount in controversy cannot exceed $75,000 under Chase's assertion that it is less than $74,000," thus Chase has not met its burden of proving the propriety of removal. Remand Mem. at 10.

Chase responds that its Notice of Removal affirms the amount in controversy exceeds $75,000, noting:

> Plaintiff seeks restitution of the $72,050 that she allegedly lost as a result of a scam, in addition to general damages, treble damages, punitive damages and attorneys' fees and costs . . . . The amount in controversy with respect to Plaintiff's elder financial abuse claim alone exceeds the jurisdictional limit as trebled damages are considered for purposes of calculating the amount in controversy for diversity cases.

Remand Opp'n at 10 (quoting Notice ¶ 14 (internal citations omitted)).

The relevance of Plaintiff's amount in controversy argument is not clear to the Court, as the Court has already found Chase failed to establish diversity jurisdiction in its prior Order, *see* Discharge Order at 2 n.2, and lack of diversity jurisdiction is not the basis for Plaintiff's Motion to Remand, *see generally* Remand Mem. Plaintiff makes no argument the $75,000 amount in controversy requirement for diversity jurisdiction is a prerequisite for federal question jurisdiction under the Edge Act, nor could she. *See Brit.-Am. Tobacco Co. v. Fed. Rsrv. Bank of N. Y.*, 105 F.2d 935, 936 (2d Cir. 1939) (explaining that § 632 provides federal jurisdiction "regardless of the amount in controversy"). The Court is thus unpersuaded that Chase failed to prove the propriety of removal on this basis. Further, Plaintiff makes no argument that the proportion of the international wire transfer to the amount in controversy is otherwise relevant to her Motion to Remand, and the Court does not find such issue affects its analysis.

In light of the foregoing, the Court **DENIES** Plaintiff's Motion to Remand.

/ / /

/ / /

/ / /

## CHASE'S MOTION TO COMPEL ARBITRATION

### I.    Legal Standard

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement. 9 U.S.C. § 4. The FAA reflects both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In deciding whether to compel arbitration, courts must generally "determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Courts generally resolve those issues by "apply[ing] ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also* 9 U.S.C. § 2. If the answer to both questions is yes, a court must enforce the agreement and compel arbitration. *See, e.g.*, *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Doubts regarding the scope of an agreement must be resolved in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).

### II.    Analysis

Chase contends that Plaintiff agreed to arbitrate because when she opened her Account on July 13, 2021, she signed a Personal Signature Card, "acknowledg[ing] receipt of the Bank's Deposit Account Agreement" and "agree[ing] to be bound by the terms and conditions contained therein as amended from time to time." Arb. Mot. at 2–3 (quoting Exhibit A to Williams Decl. ("Personal Signature Card"), ECF No. 10-3).

The Deposit Account Agreement ("DAA") includes a provision at Section X, titled, "*Arbitration; Resolving Disputes*" (the "Arbitration Agreement"), which provides that disputes or claims between the parties are subject to mandatory arbitration:

> You and we agree that upon the election of either of us, any claims or disputes (as defined below) will be resolved by binding arbitration as discussed below[.]
>
> [. . .]
>
> This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA").
>
> [. . .]
>
> **What claims or disputes are subject to arbitration?**
>
> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, and any related service or agreement with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us . . . are included. Claims or disputes are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims." The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.
>
> […]
>
> **Does arbitration apply to Claims involving third parties?**
>
> Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well . . . . For purposes of arbitration, . . . "we" include[] JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim.

Exhibit B to Williams Decl. ("July 2021 DAA"), ECF No. 10-4 at Section X.[3] And Chase

---

[3] Chase indicates that the Arbitration Agreement in the operative DAA was in effect from June 11, 2023, through October 14, 2023, including when Plaintiff made the subject transfers to the purported third-party fraudsters. Arb. Mot. at 4 n.4 (citing June 2023 Deposit Account Agreement, Exhibit C to Declaration of

asserts that Plaintiff's claims against Defendants fall squarely within the broad scope of the Arbitration Agreement.  Arb. Mot. at 8–10.

Plaintiff responds that she never agreed to the DAA, and even if she had, the DAA is an unenforceable, unconscionable, adhesive contract.  *See generally* Arb. Opp'n. Moreover, Plaintiff argues she cannot be forced to arbitrate her claims under the UCL because such claims seek to redress a public injury.  *Id.* at 14–16.

### A. *Evidentiary Objections*

As an initial matter, Plaintiff raises several evidentiary objections to the Declarations submitted by Chase in support of its Motion to Compel Arbitration.  *See generally* Pl.'s Arb. Objs.  Plaintiff objects to portions of Chase's Declaration of Halie Williams based on hearsay (Federal Rules of Evidence 802, 803(6)) and lack of personal knowledge (Federal Rule of Evidence 602).  *Id.* at 3–5.  She also objects to a single portion of the Declaration of William A. Garrett based on relevance (Federal Rule of Evidence 402).  *Id.* at 2.

Specifically, Plaintiff argues portions of Ms. Williams's Declaration and attached exhibits are hearsay and do not satisfy the business records exception of Federal Rule of Evidence 803(6) because:

> (1) Chase has not given any evidence that the records were made at or near the time by—or from information transmitted by— someone with knowledge; (2) although the declarant has "access to information in the normal course of business," Chase maintains records "in the ordinary course of business," and [the Exhibits were] "made in the ordinary course of business," no evidence goes to show that the records in question were kept *specifically* in the course of Chase's regularly conducted business activity; (3) no evidence shows making the records in question were a regular practice of any particular activity; and (4) no declarant has testified to the foregoing factors.

Pl.'s Arb. Objs. at 3–5.  In response, Chase relies on a Supplemental Declaration of Halie

---

Halie Williams, Section X).  Chase represents that this Agreement is "the same in all material respects regarding arbitration as the DAA in effect when Plaintiff opened the Account," *id.*, which Plaintiff does not dispute.

Williams addressing the foregoing factors. *See generally* Resp. to Arb. Objs. Ms. Williams attests: "In my capacity as Vice President, Product Manager Sr., I have access to information in the normal course of business regarding certain Chase banking operations and practices, including maintenance, revisions to, and distributions of account agreements. I also have access through Chase's systems to information and records relating to Chase deposit account holders, including [Plaintiff.]"   Williams Suppl. Decl. ¶ 2. Further, Ms. Williams indicates "[t]he records attached hereto were created and maintained in the ordinary course of business at Chase and were created at or near the time of the occurrence of the matters set forth by those records. All facts set forth in this Declaration are based upon my personal knowledge or my review of records maintained by Chase in the ordinary course of business." *Id.* ¶ 3.

As to Plaintiff's objections that Ms. Williams "was not present when Ms. Smith opened her Chase account" or "when the Personal Signature Card was signed" and consequently lacks personal knowledge of when Plaintiff opened the account and whether she signed the Personal Signature Card, Pl.'s Arb. Objs. at 3–4, Chase responds that such evidence is a business record admissible under Rule 803(6), *see* Resp. to Arb Objs at 2–4. Chase also points out that Ms. Williams states that "she has access through Chase's systems to information and records relating to [Plaintiff]" and that "Chase's records reflect that [Plaintiff's account] was opened July 13, 2021." *Id.* at 3–4.

Plaintiff additionally argues the statement by Mr. Garrett ". . . that are governed by the Deposit Account Agreement ("DAA")" is irrelevant because it does not "specify whether 'the' agreement" is one of two account agreements proffered by Chase. Pl.'s Arb. Objs. at 2–3.   In Reply, Chase responds that such paragraph refers to "all versions of the [DAA] governing Plaintiff's account." Resp. to Arb. Objs. at 1.

Similarly, Chase objects to portions of Declarations by Plaintiff Marcia Smith and Caleb Logan in support of Plaintiff's Opposition.  As to Mr. Logan's Declaration, Chase argues statements about Microsoft Word's Flesch-Kincaid tool and the tool's calculation of Flesch reading score and Flesch-Kincaid grade level are inadmissible under Rule 602

because Mr. Logan does not have "personal knowledge of the inner workings of the Microsoft Word software program," and the report by the tool is inadmissible hearsay under Federal Rule of Evidence 806. Chase's Arb. Objs. at 1. And Chase objects to various statements by Plaintiff as irrelevant under Rule 402, and substantially outweighed by a danger of unfair prejudice and confusing the issues under Rule 403. *Id.* at 2–3.

"[A] court ruling on a motion to compel arbitration reviews the evidence on the same standard as for summary judgment under Rule 56." *Alkutkar v. Bumble Inc.*, No. 22-cv-00422-PJH, 2022 WL 16973253, at *3 (N.D. Cal. Nov. 16, 2022). As to the documents themselves, at this stage, courts do not "focus on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citations omitted). As another district court in this Circuit explained, "except in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format at trial, the court does not consider any objections on the grounds that the evidence 'constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge.'" *Pierre v. IEC Corp.,* No. 8:22-cv-01280-FWS-JDE, 2023 WL 3551962, at *4 n.1 (C.D. Cal. Mar. 14, 2023) (emphasis added).

In reaching its conclusion below, the Court does not rely on any statements that are irrelevant, lack personal knowledge, or constitute hearsay. To the extent the Court relies, in this Order, on evidence objected to, it does so because it finds the evidence could be presented in an admissible form at trial. *See e.g., Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022) ("[A]s long as a court finds that hearsay evidence could be presented in an admissible form at trial (i.e., through testimony from a witness laying the foundation for an exception or because the Court finds the evidence to be non-hearsay), it may consider the evidence when ruling on the motion for summary judgment."). Accordingly, the Court **OVERRULES** both Plaintiff's Objections and Chase's Objections.

/ / /

### B.    Validity of the Agreement

Plaintiff does not dispute that her claims fall within the Arbitration Agreement's scope, and as such, the Court need only determine "whether a valid agreement to arbitrate exists." *Vasquez v. RSI Home Prods., Inc.*, No. 8:20-cv-01494-JWHJDEx, 2020 WL 6778772, at *13 (C.D. Cal. Nov. 12, 2020) (quoting *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

The threshold issue is thus "whether the parties agreed to arbitrate." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). Here, Chase has submitted evidence that Plaintiff signed her Personal Signature Card when she opened the Account. *See* Personal Signature Card. Plaintiff's Personal Signature Card states, "I acknowledge receipt of the Bank's Deposit Account Agreement or other applicable account agreement which includes all provisions that apply to this deposit account and/or Bank Privacy Policy, and agree to be bound by the terms and conditions contained therein as amended from time to time." *Id*. The DAA includes an Arbitration Agreement which provides that disputes or claims between the parties are subject to mandatory arbitration. *See* July 2021 DAA at Section X; *see also* June 2023 DAA at Section X.

Plaintiff, for her part, does not dispute that she signed the Personal Signature Card when she opened the Account. Rather, Plaintiff argues (1) the Personal Signature Card does not look like a contract and contained a font too small for Plaintiff to read; (2) Chase employees did not call any terms to Plaintiff's attention, including the DAA's arbitration clause; (3) she did not receive a copy of the DAA; and (4) the two DAAs presented do not contain her signature. *See* Arb. Opp'n at 4–7.

Plaintiff's arguments are unpersuasive. As an initial matter, "[t]he relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account." *Chazen v. Centennial Bank*, 71 Cal. Rptr. 2d 462, 465 (Ct. App. 1998) (internal quotation marks and citation omitted). And courts recognize that plaintiffs are bound by terms contained in account agreements they agreed to be bound by in signature cards. *Andre v. U.S. Bank, N.A.*, No. CV 20-4854-

CBM-(PJWx), 2021 WL 3598737, at *2 (C.D. Cal. May 20, 2021); *see also U.S. Bank Nat'l Ass'n v. Wayman*, No. 13-cv-2203-BAS-BLM, 2015 WL 5772730, at *7 (S.D. Cal. Sept. 30, 2015).

Accordingly, by signing the Personal Signature Card, "Plaintiff consented to be bound by the provision contained in the [Deposit] Account Agreement." *Andre*, 2021 WL 3598737, at * 2; *see also Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *3 (C.D. Cal. Sept. 18, 2018) (finding a valid agreement to arbitrate existed where plaintiffs did not dispute that they signed a signature card when opening their bank account, the signature card stated that by signing the signature card plaintiffs "acknowledge[d] receipt of the Bank's Account Rules and Regulations or other applicable account agreement" and "agree[d] to be bound by the terms and conditions contained therein as amended from time to time," and the Account Rules and Regulations and Deposit Account Agreement amended contained an arbitration provision).

Plaintiff's mere denial of receipt of the DAA is insufficient to raise a triable issue as to consent. *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (denial of receipt of agreement was "not sufficient to create a material dispute of fact"); *Blau v. AT & T Mobility*, No. C 11–00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) ("If a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless."); *Al-Thani v. Wells Fargo & Co.*, No. C 08-1745 CW, 2009 WL 55442, at *6 (N.D. Cal. Jan. 7, 2009) ("If Plaintiff had not received the agreement and was concerned about being bound to terms she had not read, she could have asked to see it before signing it."). And Chase submits evidence that when Plaintiff opened her Account with Chase, it was Chase's policy and procedure to provide each customer with a copy of the DAA. Suppl. Williams Decl. ¶ 5. Moreover, Chase makes copies of the effective DAA available to every customer who holds a deposit account with Chase both in branches and on the Chase.com website. *Id.* ¶ 6.

Finally, Plaintiff's argument that she is not bound by the terms of the DAA because she is unable to read small type does not sway the Court. Under California law, "'[o]ne

who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read [it], he should have it read or explained to him.'" *Caballero v. Premier Care Simi Valley LLC*, 284 Cal. Rptr. 3d 560, 564–65 (Ct. App. 2021) (quoting *Randas v. YMCA of Metro. L.A.*, 21 Cal. Rptr. 2d 245, 248 (Ct. App. 1993)).

### C.   Unconscionability

Plaintiff next argues the DAA is unconscionable and therefore unenforceable.  Under § 2 of the FAA, arbitration agreements can "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)).  In California, "unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)).  Plaintiff, as the party opposing arbitration, must demonstrate both forms of unconscionability, though they "need not be present in the same degree." *Lim*, 8 F.4th at 1000 (quoting *Poublon*, 846 F.3d at 1260).

Before the Court can contemplate the merits of Plaintiff's unconscionability argument, the Court must determine whether it can entertain that argument at all.  "When a plaintiff argues that an arbitration clause, standing alone, is unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a question to be decided by the court." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) (citing *Cox*, 533 F.3d at 1120).  However, "when a plaintiff's legal challenge is that a contract as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions (such as the arbitration clause)." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[A]s a matter of substantive federal arbitration

law, an arbitration provision is severable from the remainder of the contract. [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.")).

To determine whether a challenge is to an arbitration provision alone or to an entire contract, courts evaluate the "crux of the complaint," or under appropriate circumstances, the arguments made in a party's opposition to a motion to compel. *See Bridge Fund*, 622 F.3d at 1002 ("[W]e look not only to the complaint, but to Plaintiffs' motion papers, to determine if Plaintiffs' objections to the arbitration clause are severable from Plaintiffs' challenge to the validity of the . . . agreement as a whole."). When the "substantive basis of the challenge" is to the arbitration provision, the court resolves the question. *Id.* at 1001; *see also Rent–A–Ctr.,* 561 U.S. at 71 ("[W]e . . . require the basis of [the] challenge to be directed specifically to the agreement to arbitrate before the court will intervene."). However, when the challenge is a general challenge to the overarching contract, the challenge goes to the arbitrator. *Buckeye,* 546 U.S. at 449.

Chase argues the Court should compel arbitration as to the unconscionability issues in this case, as "almost [Plaintiff's] entire argument goes to the enforceability of the DAA as a whole rather than the enforceability of the Arbitration Agreement itself." Arb. Reply at 5. The Court agrees that the bulk of Plaintiff's argument in her Opposition challenges the enforceability of the overarching DAA, rather than the Arbitration Agreement. Specifically, Plaintiff argues the DAAs are procedurally and substantively unconscionable and requests that the Court "refuse to enforce the DAA even if it finds a valid agreement between Chase and Ms. Smith." Arb. Opp'n at 8. Although Plaintiff references the Arbitration Agreement in her argument, she often appears to do so as an example of the unconscionability of the DAA as a whole. To the extent Plaintiff challenges the overarching contract, such challenge goes to the arbitrator. *Buckeye,* 546 U.S. at 449.

Nevertheless, the Court finds it appropriate to address Plaintiff's arguments to the extent she also challenges the Arbitration Agreement within the DAA as procedurally and substantively unconscionable.

17

### 1. Procedural Unconscionability

Preliminarily, the Court does not find the Arbitration Agreement procedurally unconscionable. "The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012)). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 282 P.3d at 1232.

Here, as Plaintiff notes, the Arbitration Agreement has an opt out provision that permits individuals to opt out within 60 days of opening the account. *See* Arb. Opp'n at 8–9 (first citing July 2021 DAA at 24; and then citing Exhibit C to Williams Decl. ("June 2023 DAA"), ECF No. 10-5 at 25). But a "meaningful right to opt-out of [arbitration] necessarily renders [the arbitration clause] procedurally conscionable as a matter of law." *Mohamed*, 848 F.3d at 1210; *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (finding no procedural unconscionability where arbitration provision within promissory note contained 60-day opt-out provision); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–00 (9th Cir. 2002) (holding that plaintiff failed to establish procedural unconscionability because agreement included 30-day opt out provision for arbitration). While Plaintiff argues that she "did not perceive that she had any opportunity to modify, negotiate, or refuse any agreement when she opened her account in 2021," Arb. Opp'n at 9 (citing Smith Decl. ¶ 5), "the general rule is that 'one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument.'" *Cir. City Stores, Inc.*, 283 F.3d at 1200 (citing *Madden v. Kaiser Found. Hosps.*, 552 P.2d 1178, 1185 (Cal. 1976)).

Even if Plaintiff were to make it past this initial hurdle, Plaintiff's argument that the DAA "contain[s] other elements of procedural unconscionability" does not sway the Court that the Arbitration Agreement is procedurally unconscionable. As explained above, Plaintiff mainly challenges the DAA, rather than the Arbitration Agreement, as she argues

the DAA is a "prolix, pre-printed form document," and "the entire contract is in small, tightly spaced font and uses language that requires an attorney to fully understand." Arb. Opp'n at 10. To the extent she suggests the Arbitration Agreement itself is procedurally unconscionable because it is "set forth at the very end" of the DAA, *id.*, this is not a situation where the arbitration clause was buried in fine print in the contract, but was instead "in its own section, clearly labeled, in boldface." *Kilgore*, 718 F.3d at 1059; *see also Pinnacle*, 282 P.3d at 1232 n.12 (finding no unfair surprise where arbitration provisions appeared in separate article with bold, capitalized, and underlined headings); *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 1321 (Ct. App. 2005) (finding no unfair surprise where arbitration provisions were offset with a "clear heading").

And while Plaintiff relies on "Flesch reading ease score" and "Flesch-Kincaid grade level" tests, to demonstrate the "complexity of the arbitration clause's words and sentences," Arb. Opp'n at 10, Plaintiff does not cite any cases "considering, let alone adopting, these tests as part of an unconscionability analysis," *In re Stubhub Refund Litig.*, 2021 WL 5447006, at *9 (N.D. Cal. Nov. 22, 2021) (finding Flesch Reading Ease and Flesch-Kincaid tests failed to establish arbitration provision was procedurally unconscionable). Furthermore, Plaintiff does not demonstrate that the Arbitration Agreement was "composed in a manner . . . to thwart rather than promote understanding." *Davis v. TWC Dealer Grp., Inc.*, 254 Cal. Rptr. 3d 443, 450–51 (Ct. App. 2019), *reh'g denied* (Nov. 26, 2019), *review denied* (Feb. 11, 2020) (finding high procedural unconscionability where typeface "challenge[d] the limits of legibility," was written in a single block of text with no paragraph separation, and required legal training to understand references to statutory provisions).

Nor is the Court persuaded that the DAA's language indicating Chase can "change the terms of this agreement . . . at any time" without notice unless the "change would adversely affect you," Arb. Opp'n at 10 (first citing July 2021 DAA at 22, 24; and then citing June 2023 DAA at 22, 25), renders the arbitration clause procedurally unconscionable. Plaintiff suggests this language is procedurally unconscionable as the

Arbitration Agreement applies to past, present, and future claims. *Id.* Plaintiff points to *Heckman v. Live Nation Entertainment, Inc.*, where the court found a unilateral modification provision without prior notice to be illusory because the modification provision expressly applied "not only prospectively but also retroactively." 120 F.4th 670, 683 (9th Cir. 2024). However, under California law, a "unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims." *Peleg v. Neiman Marcus Grp., Inc.*,140 Cal. Rptr. 3d 38, 67 (Ct. App. 2012). And Plaintiff does not argue that the modification provision in the DAA here, as opposed to the provision in *Heckman*, "expressly addresses whether contract changes apply to claims that have accrued or are known[.]" *Peleg*, 140 Cal. Rptr. 3d at 68. Accordingly, California's covenant of good faith and fair dealing saves the Arbitration Agreement from being illusory. *See Wright v. JPMorgan Chase Bank N.A.*, No. CV 13-9022 DMG (MRWX), 2014 WL 13130330, at *7 (C.D. Cal. Aug. 1, 2014) (finding no additional procedural unconscionability where agreement allowed for unilateral modification but was silent as to whether any changes apply to known or accrued claims). Thus, the Court finds Plaintiff has not shown procedural unconscionability.

### 2. *Substantive Unconscionability*

Plaintiff next makes substantive unconscionability arguments, but even were these arguments successful, substantive unconscionability alone is not enough; she must demonstrate *both* forms of unconscionability, though they "need not be present in the same degree." *Lim*, 8 F.4th at 1000 (quoting *Poublon*, 846 F.3d at 1260). In any event, the Court does not find Plaintiff has demonstrated the Arbitration Agreement is substantively unconscionable.

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle*, 282 P.3d at 1232 (citations omitted). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as

to shock the conscience.'" *Id.* (citation omitted).

First, Plaintiff argues the DAA is substantively unconscionable as "the entire document is in fine print other than the Table of Contents and Privacy Notice." Arb. Opp'n at 12. As explained above, this is a substantive challenge to the unconscionability of the contract as a whole, not the arbitration clause; thus such challenge goes to the arbitrator. *See Buckeye,* 546 U.S. at 449.

Next, Plaintiff argues the opt-out provision is "largely meaningless" because, according to Plaintiff, Chase "can nullify a consumer's decision to opt out simply by sending the consumer a new agreement." Arb. Opp'n at 12. However, the Court agrees with Chase, that it "plainly could not force a customer that had opted out of an arbitration agreement to *agree* to a new arbitration agreement." Arb. Reply at 8 (emphasis in original). And to the extent Plaintiff suggests the 60-day opt-out provision makes the Arbitration Agreement substantively unconscionable, such contention is not supported by the law. *See Kilgore*, 718 F.3d at 1059 (holding 60-day opt-out provision to be evidence *against* a finding of unconscionability).

Additionally, Plaintiff has not persuaded the Court that the Arbitration Agreement is unconscionable because it does not include a copy of the applicable American Arbitration Association ("AAA") and Judicial Arbitration and Mediation Services ("JAMS") rules, in light of authority to the contrary. *See Poublon*, 846 F.3d at 1262 (9th Cir. 2017) (rejecting argument that failure to attach arbitration rules rendered arbitration agreement procedurally or substantively unconscionable); *Baltazar v. Forever 21 Inc.*, 367 P.3d 6, 12–13 (Cal. 2016) (holding that failure to attach arbitration rules did not render arbitration more procedurally unconscionable and would impact analysis of substantive unconscionability only if the allegedly unconscionable term was part of the arbitration rules rather than agreement itself). True, the Court "may 'more closely scrutinize the substantive unconscionability' of terms appearing only in the [AAA] rules," but the incorporation of these documents by reference does not support Plaintiff's claim that the Arbitration Agreement was oppressive. *See Poublon*, 846 F.3d at 1262 (quotation omitted).

Finally, Plaintiff suggests the Arbitration Agreement is unconscionable because the AAA rules "generally do not allow for any depositions, and even document requests must be approved by the arbitrator, differing greatly from litigation."  Arb. Opp'n at 13.  And Plaintiff contends she will be left with these "largely useless discovery provisions," and not be able to utilize JAMS's apparently more desirable rules because of a purported conflict between Chase's Arbitration Agreement and JAMS's minimum standards for consumer cases.  *Id.*  The Court is persuaded by Chase's representation that JAMS arbitration is, in fact, available, *see* Arb. Reply at 9, and in any event, Plaintiff fails to explain why the AAA procedures are substantively unconscionable; instead, she admits the AAA rules do not prohibit additional discovery that is needed to ensure "a fundamentally fair process," *see* Arb. Opp'n at 13.

Accordingly, the Court does not find the Arbitration Agreement to be substantively unconscionable. [4]

### D. Affecting the Public

Next, Plaintiff contends that she may not be forced to arbitrate her UCL claims, as under *McGill v. Citibank, N.A.*, 393 P.3d 85, 95 (Cal. 2017), California law "forbids agreements that prohibit the right to seek public injunctive relief in any forum."  Arb. Opp'n at 14.  Plaintiff argues that she "seeks to redress a public injury here," as her UCL claim "states that Chase's conduct injures 'consumers,' i.e., the public, and that its conduct includes 'waiving through manifestly fraudulent transactions like Ms. Smith's cash withdrawal and wire transfer.'"  Arb. Opp'n at 15 (citing Compl. ¶ 63).  She asserts the claim "also targets Chase's concealment of 'the true nature of its anti-fraud practices, which focus primarily on protecting credit accountholders rather than deposit accountholders.'"  *Id.* (citing Compl. ¶ 64).  Plaintiff thus seeks an injunction "enjoining

---

[4] The Court notes Plaintiff additionally argues "the DAA more generally has substantially unfair terms," unspecific to the Arbitration Agreement.  Arb. Opp'n at 7–8.  Plaintiff does not cite any authorities in support of her position as to these terms.  However, in any event, such a challenge to the overarching contract goes to the arbitrator.  *See Buckeye,* 546 U.S. at 449.

Chase permanently from violating Business & Professions Code section 17200 in connection with the violations alleged in the Complaint."  Compl. at Prayer for Relief.

However, to seek public injunctive relief in federal court, Plaintiff must also allege that she has Article III standing.  "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  But *Davidson* further states:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969–70 (citation and footnote omitted).

Here, Plaintiff has not alleged she is threatened with future harm.  Rather, she admits "the injunction requested will not benefit her because Chase's deceptive practices have already injured her and thus alerted her to their true nature."  Arb. Opp'n at 15 (citing Compl. ¶ 64).  Accordingly, *McGill* does not preclude arbitration of Plaintiff's California UCL claims.  *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020) (holding because plaintiff's "complaint does not allege the threat of future harm . . . required for Article III standing in a case seeking public injunctive relief . . . the *McGill* rule does not preclude arbitration of her California UCL claim").

Thus, the Court **GRANTS** Chase's Motion to Compel Arbitration (ECF No. 10).

/ / /

/ / /

### E.    Impact on Plaintiff's Complaint

The Court must still decide what happens to Plaintiff's Complaint. Chase argues the Action must be stayed pending the outcome of arbitration. Arb. Mot. at 10–11. Plaintiff does not resist this assertion, and the Court agrees. When a court "finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). For the reasons discussed above, Plaintiff's claims against Defendants are subject to binding arbitration. Accordingly, this action must be stayed in its entirety pending completion of arbitration.

**CONCLUSION**

In light of the foregoing, the Court:

1. **DENIES** Plaintiff's Remand Motion (ECF No. 9);

2. **OVERRULES** Plaintiff's Evidentiary Objections (ECF No. 17-3);

3. **OVERRULES** Defendant Chase's Evidentiary Objections (ECF No. 19-6);

4. **GRANTS** Defendant Chase's Arbitration Motion (ECF No. 10); and

5. **STAYS** this action pending the completion of arbitration proceedings pursuant to 9 U.S.C. § 3.

The Parties **SHALL FILE** a joint status update on the arbitration proceedings every 120 days, starting from the date of this Order, and within 14 days of the proceedings' completion.

**IT IS SO ORDERED.**

Dated:  June 2, 2025

Hon. Janis L. Sammartino
United States District Judge